**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

KYLE POULSON,

                              Plaintiff,

v.                                                                3:17-CV-485
                                                                  (CFH)
NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                                 **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM              PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Counsel for Plaintiff

U.S. SOCIAL SECURITY ADMIN.           SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
26 Federal Plaza - Room 3904
New York, New York 10278
Counsel for Defendant

**CHRISTIAN F. HUMMEL,
United States Magistrate Judge**

## <u>MEMORANDUM-DECISION & ORDER</u>

        Currently before the Court, in this Social Security action filed by Kyle Poulson

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 11 and 12.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is granted, and Defendant's motion for judgment on the pleadings is denied.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1970, making him 41 years old at the alleged onset date and 45 years old at the date of the ALJ's decision.  Plaintiff reported completing the tenth grade and obtaining a GED.  He has no past relevant work.  At the initial level, Plaintiff alleged disability due to arthritis and posttraumatic stress disorder ("PTSD").

### B.     Procedural History

Plaintiff applied for Supplemental Security Income on September 10, 2013, alleging disability beginning September 1, 2011.  Plaintiff's application was initially denied on December 19, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Laura Michalec Olszewski on July 14, 2015.  On October 9, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 8-26.)[1]  On March 7, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 13-22.)  First, the ALJ found that Plaintiff has not engaged in

---

[1]     The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

substantial gainful activity since September 10, 2013, the application date.  (T. 13.)

Second, the ALJ found that Plaintiff's arthritis and PTSD are severe impairments.  (T.

14.)  Third, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 14-15.)  Specifically, the ALJ

considered Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and

12.09 (substance addiction disorders).  (Id.)  Fourth, the ALJ found that Plaintiff has the

residual functional capacity ("RFC") to perform the full range of sedentary work as

defined in 20 C.F.R. § 416.967(a) with the following limitations:

> [h]e can lift and[/]or carry 10 pounds occasionally; sit for six
> hours in an eight-hour workday, and stand and[/]or walk for
> two hours in an eight hour workday.  He can occasionally
> climb ramps and stairs but should never climb ladders and
> scaffolds; occasionally balance and stoop; never kneel,
> crouch and crawl and should avoid uneven ground; frequently
> push and pull up to the limits of light work.  He should work in
> a low stress environment defined as occasional use of
> judgment, occasional decision-making, and occasional
> changes in work setting performing simple and routine tasks
> and occasional interactions with supervisors, co-workers and
> the public.

(Id. at 15.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (Id. at 20.)

Sixth, the ALJ found that Plaintiff is capable of performing other jobs existing in

significant numbers in the national economy.  (Id. at 20-21.)  Therefore, the ALJ

concluded that Plaintiff is not disabled.

### D.    The Parties' Briefings on Their Cross-Motions

### 1.    Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes four arguments in support of his motion for judgment

on the pleadings.  (Dkt. No. 11, at 3-4, 13-25 [Pl.'s Mem. of Law].)  First, Plaintiff argues

that the ALJ failed to consider whether he could work on a consistent basis and substituted her judgment for the judgment or opinions of Plaintiff's medical providers. (Id. at 3-4, 13-16.)  Plaintiff argues that the vocational expert ("VE") testified that the ALJ's RFC allows for work only if the combination of physical and mental impairments do not result in more than one day of absenteeism or more than ten percent of time off-task.  (Id. at 13.)  Plaintiff argues that four opinions of record -- from psychiatric consultative examiner Cheryl Loomis, Ph.D.; treating counselor Paul Komatinsky, LCSW-R; non-examining State agency psychiatric consultant L. Blackwell, Ph.D.; and independent examiner Lawrence Wiesner, D.O. -- indicate Plaintiff could not perform the type of work determined by the ALJ on a consistent basis without some interruption. (Id. at 13-15.)  Plaintiff also argues that the ALJ did not consider whether Plaintiff's conditions would flare at times such that he would not be able to work on a consistent basis.  (Id. at 14.)  Additionally, Plaintiff argues that the ALJ did not consider Dr. Wiesner's opinion stating that the type of impairments from which Plaintiff suffers are not static, rather, they produce "good" days and "bad" days and would cause absenteeism on the worst of the days, which Dr. Wiesner opined would be about three days per month.  (Id. at 14-15.)

Second, Plaintiff argues that the ALJ did not properly assess the opinions of record including those of Drs. Loomis and Blackwell, Mr. Komatinsky, and physical consultative examiner Justine Magurno, M.D.  (Id. at 15-22.)  Specifically, Plaintiff argues that the ALJ failed to properly weigh these opinions, instead providing one-sentence conclusory statements that are insufficient to permit meaningful judicial review.  (Id. at 16-17, 19.)

4

Plaintiff argues that, if the regulatory factors were properly applied, Dr. Loomis' opinion should have been afforded significant weight and that the ALJ rejected this opinion without relying on any contradictory medical source, thereby improperly substituting her opinion for that of competent medical opinion. (Id. at 17-19.) Plaintiff argues that Dr. Blackwell's opinion should have been given no weight or very little weight and that because it cannot provide substantial support for the ALJ's mental RFC determination, the ALJ's reliance on this opinion is prejudicial. (Id. at 19-21.) Additionally, Plaintiff argues that, contrary to the ALJ's analysis, Mr. Komatinsky explained the basis for his opinion, and, thus, his opinion is entitled to greater weight. (Id. at 21-22.)

Third, Plaintiff argues that the ALJ failed to assess all of his severe impairments. (Id. at 22-25.) Specifically, Plaintiff argues that the ALJ failed to provide any analysis or explanation at Step Two as to why she did not find any of Plaintiff's other psychiatric and physical impairments -- including depression, mood disorder, personality disorder, and carpal tunnel syndrome ("CTS") -- to be severe impairments. (Id. at 22-23.) Plaintiff also argues that the ALJ did not include any limitations related to these impairments in the RFC analysis. (Id. at 24.) In particular, Plaintiff points to evidence of the full extent of his other psychiatric impairments as well the RFC's lack of limitations with respect to his ability to finger, feel, or handle, despite a diagnosis of CTS on the right. (Id. at 23-25.) Plaintiff argues this error is prejudicial because the VE testified that he would not be able to perform any work if: (a) Plaintiff were limited to occasional handling, fingering, and feeling; (b) he were able to relate with others only less than occasionally; or (c) if he could handle stress only less than occasionally. (Id.)

Fourth, Plaintiff argues that the Step Five determination is not supported by substantial evidence because (1) the RFC does not accurately reflect the true extent of Plaintiff's limitations, and (2) the hypothetical question posed to the VE based on the RFC was inaccurate, resulting in testimony that cannot constitute substantial evidence. (Id. at 25.)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. (Dkt. No. 12, at 4-16 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ properly assessed the opinions of record when determining Plaintiff's RFC. (Id. at 6-14.) Specifically, Defendant argues that Dr. Blackwell's opinion supports the mental portion of the ALJ's RFC finding and that Dr. Blackwell's use of the term "moderate" to describe some of Plaintiff's limitations would not preclude Plaintiff from performing the basic mental demands of unskilled work. (Id. at 7-8.) Defendant points out Dr. Blackwell's conclusion that the totality of the available evidence indicated that Plaintiff could perform simple tasks in a low-contact setting, consistent with his opinion that Plaintiff had no significant to moderate limitations. (Id.) Defendant also argues that the ALJ afforded great weight to Dr. Blackwell's opinion because it was consistent with the record as a whole and supported by relevant evidence, and that the ALJ was entitled to rely on Dr. Blackwell's opinion as substantial evidence in support of the RFC because he is a highly-qualified State agency medical consultant and expert in the evaluation of medical issues in disability claims under the Act. (Id. at 8-9.)

Defendant also argues that the ALJ did not reject Dr. Loomis' opinion as Plaintiff contends, rather she afforded it only partial weight because it was not consistent with the record as a whole and not supported by relevant evidence. (Id. at 9-10.) Defendant also argues that the marked limitations Dr. Loomis opined would not preclude Plaintiff from performing the basic mental requirements of unskilled work. (Id. at 10-11.) Defendant additionally argues that the RFC is supported by Dr. Wiesner's opinion and examination, which indicated unremarkable physical examination findings. (Id. at 11.) Defendant further contends that the fact that the ALJ did not explicitly weigh Dr. Wiesner's opinion is not reversible error because that opinion is consistent with the RFC. (Id. at 11-12.)

Regarding Plaintiff's contention that the ALJ should have assessed his ability to perform at the level of the RFC on a consistent basis, Defendant argues that the ALJ referenced all of the opinions of record, including those of Dr. Wiesner and Mr. Komatinsky (indicating Plaintiff would be off-task more than 33 percent of the time), and properly determined that neither opinion was entitled to controlling weight. (Id. at 12.) Defendant argues that the record does not support such extreme limitations. (Id.) Defendant also argues that, although the ALJ did not explicitly discuss the portion of Dr. Wiesner's opinion indicating Plaintiff would be off-task more than 33 percent of the day and absent more than four days of work per month, remand to allow the ALJ to expressly evaluate this portion of the opinion is not warranted because (a) it is purely speculative, (b) it is not supported by Dr. Wiesner's unremarkable physical examination findings, and (c) the ALJ did not err in declining to include restrictions regarding Plaintiff's ability to remain on task based on Dr. Wiesner's opinion. (Id. at 12-13.)

Additionally, Defendant argues that, to the extent that Dr. Wiesner based this portion of his opinion on Plaintiff's mental status, it should not be given any weight because Dr. Wiesner was not qualified to render such an opinion as an orthopedic surgeon.  (Id.)

Regarding Mr. Komatinsky's opinion that Plaintiff would be off-task during the day and absent from work four or more days per month, Defendant argues that the ALJ discussed Mr. Komatinsky's opinion and properly gave it little weight because it was not supported by relevant evidence.  (Id. at 13.)  Defendant also argues that Mr. Komatinsky's opinion would never be entitled to controlling weight because Mr. Komatinsky is a licensed clinical social worker who is not considered an acceptable medical source under 20 C.F.R. § 416.912 and Social Security Ruling ("SSR") 06-03p. (Id.)  Additionally, Defendant argues that the ALJ did not reject this opinion; instead, the RFC reflects that Plaintiff is limited to working in a low-stress environment defined as occasional use of judgment, occasional decision-making, occasional changes in the work setting, performing simple and routine tasks, and occasional interaction with others, which is consistent with Mr. Komatinsky's opinion.  (Id. at 13-14.)

Second, Defendant argues that the ALJ correctly determined the severity of Plaintiff's impairments at Step Two.  (Id. at 14-16.)  Defendant notes that the ALJ's evaluation of Plaintiff's claim did not stop at Step Two, but continued through Step Five, and, therefore, any error at Step Two was cured when the ALJ proceeded to Step Five. (Id. at 16.)  Specifically, Defendant argues that Dr. Blackwell considered Plaintiff's mental condition and opined that Plaintiff was able to perform simple work in a low-contact setting, which the ALJ then incorporated into the RFC.  (Id. at 14-15.) Defendant argues that Plaintiff has not established additional functional limitations due

to depression, mood disorder, and/or personality disorder beyond those the ALJ already considered.  (Id. at 15.)

Regarding Plaintiff's alleged CTS, Defendant contends that Dr. Wiesner found no objective physical findings to support Plaintiff's claim of right hand pain.  (Id.)  Defendant also contends that the ALJ considered Dr. Wiesner's opinion and the lifting/carrying restrictions with the right-upper extremity opined by Dr. Magurno and precluded Plaintiff from lifting/carrying more than ten pounds at a time.  (Id.)  Defendant notes Dr. Magurno's examination findings and argues that Plaintiff failed to prove he had functional limitations related to CTS beyond the limitations the ALJ already found.  (Id.)  Defendant additionally argues that no medical source opined that Plaintiff had limitations in his ability to finger, feel, or handle with his right hand.  (Id.)

Third, Defendant argues that the ALJ's Step Five finding should be upheld.  (Id. at 16.)  Specifically, Defendant argues that the VE's testimony provides substantial evidence in support of the ALJ's Step Five finding because the ALJ's RFC finding is well-supported and the hypothetical question she posed to the VE was based on the RFC.  (Id.)

### 3.  Plaintiff's Reply Memorandum of Law

Generally, Plaintiff makes four arguments on reply.  (Dkt. No. 13, Attach. 1, at 1-5 [Pl.'s Reply Mem. of Law].)  First, in reply to Defendant's contention that Dr. Blackwell opined that Plaintiff had no significant to moderate limitations, Plaintiff argues that Defendant attempts to downplay the significance of a "moderate" limitation, and that Dr. Blackwell clearly intended to indicate limitations on the form he completed.  (Dkt. No. 12, at 6-8 [Def.'s Mem. of Law; Dkt. No. 13, Attach. 1, at 1 [Pl.'s Reply Mem. of Law].)

Plaintiff argues that the phrase "moderately limited" means that the evidence supports the conclusion that the individual's capacity to perform an activity is impaired and the degree and extent of the limitations is supposed to be further explained, but that because there is not any further explanation, Dr. Blackwell's opinion is vague and meaningless.  (Dkt. No. 13, Attach. 1, at 1 [Pl.'s Reply Mem. of Law].)  Plaintiff argues that this opinion, when considered together with all other relevant evidence, is insufficient to constitute substantial evidence in support of the ALJ's RFC.  (Id. at 1-2.) Plaintiff also argues that the RFC fails to account for any limitation -- moderate or otherwise -- in Plaintiff's ability to consistently work within a schedule and with regular attendance.  (Id. at 2.)

Second, Plaintiff argues that the ALJ's RFC determination must be based on medical opinion and that none of the three opinions pertaining to Plaintiff's mental functioning -- from Dr. Loomis, Dr. Blackwell, and Mr. Komatinsky -- provide substantial support for the RFC.  (Id. at 2-5.)  Rather, Plaintiff argues that the ALJ improperly substituted her lay judgment for the competent medical opinions.  (Id. at 2.)  Plaintiff cites (a) Dr. Loomis' opinion, arguing that Dr. Loomis' assessment of marked limitations in the abilities to perform simple tasks, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, adequately relate with others, and appropriately deal with stress shows limitations far more significant than those found by the ALJ in the RFC determination; (b) Mr. Komatinsky's assessment of marked limitations in numerous areas of functioning and extreme limitations in concentration, persistence, and interacting with others; and (c) Dr. Blackwell's opinion indicating moderate limitations in twelve different areas of functioning.  (Id. at 3.)  Plaintiff argues

that the ALJ included no limitation in attention and concentration or in maintaining a regular schedule, and inadequate limitations in interacting with others, using judgment, and handling stress.  (Id. at 4.)  Plaintiff also contends that the ALJ does not point to a single opinion stating that Plaintiff is able to use judgment, make decisions, handle changes in the work setting, handle stress, or interact with others up to one-third of the workday, i.e., occasionally.  (Id.)

Specifically addressing Dr. Blackwell's opinion, Plaintiff argues that Dr. Blackwell's use of the term "moderate" cannot, under the facts and circumstances of this case, support the ALJ's RFC determination.  (Id.)  Plaintiff also argues that Dr. Blackwell's narrative explanation says nothing about Plaintiff's abilities to maintain attention and concentration, maintain a regular schedule, make appropriate decisions, or appropriately deal with stress, and that Dr. Blackwell does not define what he means by a "low contact setting," particularly in terms of frequency.  (Id. at 4.)

Third, Plaintiff argues that the ALJ's physical RFC determination is not supported by any medical opinion and instead consists of the ALJ's lay interpretation of the bare medical evidence.  (Id.)  Plaintiff also argues that neither of the two medical opinions of record concerning his physical functioning support an ability to meet the demands of sedentary work.  (Id.)  Specifically, Plaintiff argues that, although the ALJ purported to afford great weight to Dr. Magurno's opinion, there is no meaningful explanation for why the ALJ failed to include Dr. Magurno's opined marked limitations for squatting, lifting or carrying, and moderate limitation in bending, or for how these assessments support the ALJ's RFC determination.  (Id. at 4-5.)  Plaintiff argues there is also no support for the ALJ's statement that Plaintiff can push and pull up to the limits of light work.  (Id. at 5.)

Fourth, Plaintiff argues that Dr. Wiesner's opinion is inconsistent with the exertional and non-exertional demands of sedentary work.  (Id.)  Plaintiff also argues that, although the ALJ discussed some of Dr. Wiesner's findings, she never weighed his opinion or explained why she failed to include his assessed limitations in the RFC.  (Id.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age,

13

education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thompson, 540 U.S. 20, 24 (2003).


## III.   ANALYSIS

### A.   Whether Substantial Evidence Supports the ALJ's Consideration of Plaintiff's Severe and Non-Severe Impairments

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 14-16 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities.  20 C.F.R. § 416.920(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  See

Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out de minimis claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. Id. (citing Miller v. Comm'r of Soc. Sec., 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. See Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found that Plaintiff's arthritis and PTSD are severe impairments. (T. 14.)  The ALJ also found that the severity of Plaintiff's mental impairment does not meet or medically equal the criteria of Listings 12.04, 12.06, or 12.09 and concluded that Plaintiff has mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and no episodes of decompensation of extended duration.  (T. 14-15.)

Plaintiff argues that the ALJ committed reversible error by failing to properly assess his alleged impairments including depression, mood disorder, personality disorder, and CTS, and by declining to include limitations related to these impairments in the RFC.  (Dkt. No. 11, at 3-4, 22-25 [Pl.'s Mem. of Law].)  Plaintiff appears to argue that the ALJ's RFC determination does not properly account for the full extent of his psychiatric impairments and right-sided CTS, which would affect the validity of the ALJ's Step Five finding that Plaintiff can perform jobs existing in significant numbers in the national economy based on the VE's testimony.  (Id.)  The Court finds these arguments unpersuasive.

Plaintiff is correct in that the ALJ did not provide analysis immediately following her numbered finding indicating Plaintiff's arthritis and PTSD are severe impairments. (T. 14.)  However, while the ALJ did not further explain this finding or articulate specific findings as to Plaintiff's alleged depression, mood disorder, personality disorder, and CTS, it is clear from her overall decision that she properly considered Plaintiff's various conditions and related limitations.  (T. 14-20.)  For example, the ALJ noted that Plaintiff "testified and/or reported in his Social Security Application that he is unable to work due to arthritis and mental disorders."  (T. 16.)  The ALJ additionally considered Plaintiff's

treatment records and the opinions from State agency consultant Dr. Blackwell, consultative examiners Drs. Magurno and Loomis, counselor Mr. Komatinsky, and independent examiner Dr. Wiesner.  (T. 16-20.)

Further, the Court finds that any error by the ALJ in failing to find the other impairments alleged by Plaintiff severe would be harmless because she did find both a physical and mental impairment to be severe, continued with the sequential evaluation, and provided explanation in her decision showing she properly considered the evidence related to all of Plaintiff's impairments.  See Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798.

For the above reasons, the ALJ's severity findings regarding Plaintiff's impairments are supported by substantial evidence.  Remand is therefore not required on this basis.  However, because remand is necessary to address the deficiencies in the ALJ's analysis of the opinion evidence (addressed in Section III.B. of this Decision and Order), Plaintiff's severe and non-severe impairments should also be addressed on remand as part of the sequential evaluation.

**B.** **Whether Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

After careful consideration, the Court answers this question in the negative for the reasons stated below.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  Greek v.

17

Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  Blinkovitch v. Comm'r of Soc. Sec., 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d

45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff could perform a modified range of sedentary work with non-exertional and mental limitations. (T. 15, 19.) Generally, Plaintiff argues

that the RFC determination is not supported by substantial evidence because the ALJ failed to properly consider the opinions of record (instead substituting her own lay interpretation for those of the medical sources) and the time Plaintiff would be off-task and absent from work as a result of his impairments.  (Dkt. No. 11, at 3-4, 13-22 [Pl.'s Mem. of Law].)

### i. The Opinions of Record

On October 31, 2013, consultative examiner Dr. Loomis diagnosed mood disorder not otherwise specified ("NOS"), drug-induced psychosis by history, polysubstance dependence in full remission, and personality disorder NOS with antisocial features and indicated the need to rule out bipolar 1 disorder.  (T. 395.)  Dr. Loomis observed that Plaintiff was defensive and hostile, though he did cooperate (although hesitantly).  (T. 393.)  Dr. Loomis also indicated Plaintiff had poor overall social skills, fluent and clear speech, a coherent and goal-directed thought process, labile affect (he became irritable and started making fists, telling examiner "you should not waste my time"), irritated mood, clear sensorium, moderately-impaired attention and concentration, moderately-impaired recent and remote memory skills (he refused to complete the exercises and stated, "you are giving me a headache"), poor insight and judgment, and overall poor eye contact.  (T. 393-94.)  Dr. Loomis observed that Plaintiff's cognitive functioning appeared to be below average with a somewhat limited fund of information.  (T. 394.)  Plaintiff sat in a slouched manner and appeared lethargic; at one point during the examination, he had his head on the table and appeared completely disinterested and indifferent to answering Dr. Loomis' questions.  (Id.) Plaintiff reported he could dress and bathe and groomed himself three times a week.

(T. 394.)  He could cook easy meals as needed and clean and do laundry (although he stated his daughter did it for him).  (T. 394-95.)  He could manage his own money, drive (although he had no license), and take public transportation independently.  (T. 395.) His daughter and girlfriend did his shopping for him.  (Id.)  He socialized with his girlfriend but had poor overall family relationships.  (Id.) He denied having any hobbies or interests and typically spent his days at home listening to the radio and staying away from people as he is on parole.  (Id.)

Dr. Loomis indicated a guarded prognosis, noting Plaintiff would not be able to manage his own funds due to his current presentation, and opined that:

> [t]he claimant exhibited no impairment in his ability to follow and understand simple directions and instructions, and learn new tasks.  The claimant exhibited marked impairment in his ability to perform simple tasks independently or under supervision, maintain attention and concentration, and maintain a regular schedule.  The claimant also exhibited marked impairment in his ability to perform complex tasks independently or under supervision, make appropriate decisions, relate[] adequately with others, and appropriately deal with stress.  The results of the present examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

(T. 395-96.)

On November 19, 2013, consultative examiner Dr. Magurno noted a chief complaint of arthritis and Plaintiff's reports that he showered, bathed, dressed, and listened to the radio, and that he cooked, cleaned, did laundry, and went shopping "once in a blue moon."  (T. 397-98.)  Dr. Magurno observed that Plaintiff had a normal gait, a one-third full squat (with complaints of snapping in his left knee on performing this task), and normal stance; he could heel and toe walk with moderate difficulty, used

21

no assistive devices, needed no help getting on and off exam table, and was able to rise

from chair without difficulty.  (T. 398.)  Plaintiff had limited range of motion in the lumbar

spine, full range of motion in the cervical spine except lateral flexion, full range of motion

of the bilateral shoulders, elbows, forearms, wrists and ankles, full range of motion of

the hips except for left adduction, and limited range of motion in the knees.  (T. 399.)

Plaintiff had bilateral flat feet, stable joints, thickening and tenderness in the right index

and middle metacarpophalangeal ("MP") joints of the hands, swelling of the soft tissues

on the right hand dorsally just proximal to the MP joint level with tenderness to

palpation, and sensory deficits in the right upper extremity to between the MP level and

wrist level, the right deltoid, and bilateral calves (though testing of his feet could not be

done as he preferred to leave his socks on).  (T. 399-400.)  He had full strength in the

upper and lower extremities, intact hand and finger dexterity, full grip strength on the left

with 4/5 grip strength on the right, and normal use of zipper/button and ability to tie a

bow.  (T. 400.)

Dr. Magurno diagnosed generalized arthritis, urinary frequency, and numbness of

undetermined etiology with a stable prognosis and opined that Plaintiff "should avoid

heights and ladders [and] uneven ground."  (Id.)  She opined marked limitations for

squatting, lifting, and carrying, and moderate limitations for bending and pushing and

pulling on the right.  (Id.)

On December 16, 2013, as part of the initial determination, Dr. Blackwell opined

that Plaintiff had moderate restriction of activities of daily living, maintaining social

functioning, and maintaining concentration, persistence or pace with no repeated

episodes of decompensation of an extended duration.  (T. 117-23.)  Dr. Blackwell

indicated that the "[t]otal information indicates the [claimant] can perform simple tasks in a low contact setting." (T. 123.)

On July 2, 2015, Mr. Komatinsky indicated that Plaintiff had marked-to-extreme limitations in the areas of concentration and persistence and interacting with others, and marked limitations in the area of dealing with stress. (T. 452.) Mr. Komatinsky indicated that Plaintiff would be off task more than 33 percent of the day and absent three or more days per month. (T. 453.) Mr. Komatinsky based his assessment on the diagnosis of PTSD and noted Plaintiff had difficulty being around people due to trust issues; had trouble staying focused due to a paranoid belief that someone may be behind him or may be talking about him; and had poor conflict resolution skills, reporting that criticism embarrassed him and made him feel "backed into a corner," and that he sometimes had flashbacks related to past traumas. (Id.) Mr. Komatinsky noted that Plaintiff took Hydroxizine (which required him to rest), Trazodone (which alone or in combination with Hydroxizine caused him to sleep or have fatigue), and Gabapentin. (Id.) Mr. Komatinsky indicated his answers covered the period between July 2, 2015, and July 2, 2016. (Id.)

On July 17, 2015, independent orthopedic examiner Dr. Wiesner noted that his review of Plaintiff's medical records showed visits to orthopedic surgeons for left shoulder and left knee pain without any diagnosis beyond pain. (T. 463.) Dr. Wiesner noted Plaintiff's complaints of severe right hand pain were unsupported by objective findings and observed that Plaintiff was able to make a full fist, had no swelling or skin changes, and that light touch caused him to react in a significant way. (T. 462-63.) Dr. Wiesner indicated Plaintiff was obviously paranoid and would benefit from mental health

evaluation.  (T. 463.)  Plaintiff had full motion in the left upper extremity, right shoulder, and lower extremity, and no restrictions in his low back on range of motion.  (Id.)  Dr. Wiesner assessed that Plaintiff's right hand pain was unsupported by objective findings and opined Plaintiff "has no restrictions for his sitting, standing . . . He has restrictions for lifting, pushing, pulling as his right hand continues to be a problem."  (Id.)

In an additional form titled "Work Capacities," Dr. Wiesner opined Plaintiff could stand and walk less than two hours during an eight-hour day; sit less than two hours during an 8-hour day; could sit/stand ten minutes before changing position; needed the opportunity to shift at will from sitting or standing/walking; could rarely lift any weight with his right hand; and could use the bilateral hands/arms less than 1/3 of each working day for fine motor activity and reaching/handling.  (T. 464-65.)  Dr. Wiesner also indicated that Plaintiff's conditions and/or side effects of medications would cause off-task time, fatigue, diminished concentration, diminished work pace, and the need to rest at work.  (T. 465-66.)  He opined Plaintiff would be off task more than thirty-three percent of day and absent more than four days per month; Plaintiff's conditions were expected to produce good days and bad days.  (T. 466.)

### i. The ALJ's Analysis

The ALJ considered the various opinions of record and afforded (a) partial weight to the opinion of Dr. Loomis (whom the ALJ noted examined Plaintiff) because it was not consistent with the record as a whole and not supported by relevant evidence, (b) great weight to the opinion of Dr. Magurno (whom the ALJ noted examined Plaintiff) because it was consistent with the record as a whole and supported with relevant evidence, (c) great weight to the opinion of Dr. Blackwell (whom the ALJ noted did not

24

examine Plaintiff) because it was consistent with the record and as a whole and supported with relevant evidence, and (d) little weight to the opinion of Mr. Komatinsky (whom the ALJ noted was a nonmedical source) because it was not supported with relevant evidence. (T. 16-20.) The ALJ summarized Dr. Wiesner's findings and some of the opined limitations, but did not otherwise indicate what weight, if any, was afforded to Dr. Wiesner's opinion. (T. 19-20.)

### ii. The Court's Analysis

Plaintiff argues that the ALJ committed multiple errors in considering the opinions of record and determining Plaintiff's RFC. (Dkt. No. 11, at 13-22 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ failed to properly weigh the opinions of record, providing only brief, one-sentence conclusory statements that are insufficient to permit meaningful judicial review. (Id. at 16-17, 19.) Although the ALJ's discussion of the opinions from Dr. Loomis, Dr. Magurno, Dr. Blackwell, and Mr. Komatinsky is indeed brief, the ALJ's overall analysis and decision provide sufficient explanation for the weight she afforded to these opinions. (T. 16-20.) The ALJ explicitly summarized these opinions and indicated the weight afforded to them. (Id.)

Plaintiff also argues that, contrary to the ALJ's analysis, Mr. Komatinsky specifically explained the basis for his opinion and that his opinion is entitled to more than little weight. (Dkt. No. 11, at 21-22 [Pl.'s Mem. of Law].) However, the ALJ noted Mr. Komatinsky was a non-medical source and afforded this opinion little weight because it was not supported with relevant evidence. (T. 20.) A review of the evidence, including Plaintiff's reported activities of daily living and limited mental health treatment, and the ALJ's decision supports the ALJ's analysis. (T. 18, 316-33, 439-50.) The ALJ

25

properly reviewed and summarized the same evidence from Mr. Komatinsky Plaintiff cites in his brief and the opinions from Dr. Blackwell, Dr. Loomis, and Mr. Komatinsky. (T. 16-18.)  Again, although the ALJ's explanation for the weight afforded to these opinions is, indeed, brief, Plaintiff has not established by either evidence or argument that he has mental limitations not adequately reflected in the RFC determination.

Plaintiff additionally argues that Dr. Loomis' opinion should have been afforded significant weight and that the ALJ rejected this opinion without relying on any contradictory medical source, which Plaintiff argues constitutes a substitution of the ALJ's opinion for that of competent medical opinion.  (Dkt. No. 11, at 17-19 [Pl.'s Mem. of Law].)  In this aspect, Plaintiff's argument appears to ignore the ALJ's reliance on Dr. Blackwell's opinion, which she afforded great weight, which indicated only moderate limitations and the ability to perform simple tasks in a low contact setting.  (T. 20.) Conversely, Plaintiff seemingly argues that Dr. Blackwell's opinion should have been given no, or very little, weight because it uses the term "moderate" without further explanation, and, therefore, cannot provide substantial support for the ALJ's mental RFC determination.  (Dkt. No. 11, at 2-5, 7-8, 19-21 [Pl.'s Mem. of Law].)

However, Dr. Blackwell's additional explanation for his opinion regarding Plaintiff's mental RFC indicated the "[t]otal information indicates [claimant] can perform simple tasks in a low contact setting." (T. 123.)  The ALJ afforded this opinion great weight and limited Plaintiff to a low-stress environment, defined as occasional use of judgment, occasional decision-making, occasional changes in the work setting, and performing simple and routine tasks and occasional interactions with supervisors, co-workers, and the public.  The Court notes that, in assessing a claimant's RFC, an ALJ is

entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  20 C.F.R. § 416.927(e); Frey, 485 F. App'x at 487; Little, 2015 WL 1399586, at *9.  The Court therefore finds that the ALJ's mental RFC determination is supported by substantial evidence.

The Court further finds that, in regard to the opinions of Dr. Loomis, Dr. Magurno, Dr. Blackwell, and Mr. Komatinsky, the ALJ's decision provides a detailed review of the evidence in this case and includes adequate explanation of the ALJ's analysis.  (T. 16-20.)  Therefore, remand is not required in relation to the ALJ's analysis of these opinions.  However, the same cannot be said for the ALJ's assessment of Dr. Wiesner's opinion.  The Court finds that the ALJ erred in failing to provide adequate explanation for her consideration of Dr. Wiesner's opinion.  (T. 19-20.)  Although it is clear that the ALJ indicated she relied largely on the opinions of Drs. Blackwell and Magurno, the Court cannot conclude that the failure to properly address Dr. Wiesner's opinion is harmless error for the following reasons.  (T. 19-20.)

First, the ALJ's analysis neglects to summarize Dr. Wiesner's full opinion at Exhibit 14F.  (T. 19, 461-70.)  The ALJ took note of Dr. Wiesner's July 2015 orthopedic evaluation -- which initially indicated a lack of restrictions for sitting and standing and some restrictions for lifting, pushing, and pulling -- which suggests that the ALJ was generally aware of both Dr. Wiesner's examination findings and the opined physical limitations contained within his examination report.  (T. 19, 463.)  However, at issue are the further limitations listed in the "Work Capacities" questionnaire Dr. Wiesner completed, seemingly indicating significant limitations in the need to change positions

and rest at work, as well as the ability to be on task, sit, stand, walk, lift with the right

hand, and use the bilateral hands/arms for fine motor activity and reaching/handling.  (T.

464-66.)  There is a notable inconsistency between the opined limitations contained in

Dr. Wiesner's medical examination report, his examination findings (indicating

complaints of severe pain with no objective findings and an overall lack of swelling or

loss of range of motion), and the limitations indicated in the "Work Capacities"

questionnaire he completed.  However, there is no indication in the ALJ's decision

indicating or suggesting how the ALJ resolved this inconsistency, or the rationale behind

any such resolution.

Second, the absence of review of the more significant limitations within Dr.

Wiesner's questionnaire and additional lack of explanation regarding what weight, if

any, was afforded to Dr. Wiesner's overall opinion leaves this Court unable to conduct

meaningful judicial review.  It is not clear from the ALJ's decision that she properly

considered both portions of Dr. Wiesner's opinion or took note of the inconsistencies

therein and it is further unclear how this opinion affected her RFC analysis.  (T. 19-20.)

The ALJ is required to provide rationale in the written decision sufficient to allow this

Court to conduct an adequate review of her findings.  See Booker v. Astrue, 07-CV-

0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's

decision must be set forth in sufficient detail as to enable meaningful review by the

court.") (citing Ferraris v. Heckler, 728 F.2d at 587); Hickman ex rel. M.A.H. v. Astrue,

728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical

bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting

Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)).

The Court notes that a lack of explanation is not error where the reviewing court can determine the underlying rationale.  See Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) ("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).  However, as discussed herein, this is not such a case.  The ALJ also has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole.  See Bliss v. Colvin, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015).  "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'"  Camarata v. Colvin, 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  Because the Court cannot determine the ALJ's underlying rationale and it is not clear from the ALJ's decision that she resolved the conflicts within Dr. Wiesner's opinion in considering the evidence of record and determining the RFC, the ALJ's failure to specify the weight afforded to Dr. Wiesner's opinion is not harmless error.

For these reasons, the Court finds that the ALJ's analysis of the opinion evidence, specifically Dr. Wiesner's opinion, and the resulting RFC determination are not supported by substantial evidence.  Remand is, therefore, required on this basis.

### C.    Whether the ALJ's Step Five Determination is Supported by Substantial Evidence

29

Because remand is necessary and the ALJ will be required to address the above-noted deficiencies in considering the opinion evidence when issuing a new decision, the Court declines to reach a finding regarding Plaintiff's arguments on Step Five.  (Dkt. No. 11, at 25 [Pl.'s Mem. of Law].)  However, on remand, the ALJ should also conduct a new Step Five determination as part of that review.

### IV.  Conclusion

**ACCORDINGLY**, for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.


Dated: June 14, 2018
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge